**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-12-0000445**
**26-FEB-2015**
**08:19 AM**

NO. CAAP-12-0000445

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CORRINA PEARL EDNA ROSS, Plaintiff/Counterclaim
Defendant/Appellee, v. REUBEN WAHINEHOOKAE,
Defendant/Counterclaimant/Appellant,
and HEIRS OF KIMO, et al., Defendants


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 08-1-0436(1))


SUMMARY DISPOSITION ORDER
(By:  Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant Reuben Wahinehookae (**Reuben**) appeals from an April 11, 2012 Judgment of the Circuit Court of the Second Circuit[1] (**Circuit Court**) determining that Plaintiff-Appellee Corrina Pearl Edna Ross (**Ross**) is the sole fee simple owner of a certain .26 acre parcel of land.  Reuben argues that certain of the Circuit Court's Findings of Fact (**FOFs**) are clearly erroneous and that its legal conclusion that Ross owns the subject parcel is wrong.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Reuben's points of error as follows:

---

[1]     The Honorable Rhonda Loo presided.

This appeal stems from an action to quiet title and involves two conflicting theories of ownership of "that certain parcel of land, being all of the land described in and covered by Royal Patent Number 4617, Land Commission Award Number 5129, lying and being at Honokohau Valley, District of Lahaina, Island and County of Maui, State of Hawaii, bearing Tax Map Key designation (2) 4-1-002-036, and containing an area of 0.26 acres, more or less free and clear" (the **Property**). During a bench trial, a title report prepared by Title Guaranty of Hawaii, Inc. was admitted into evidence as (Reuben's) Defendant's Exhibit 1 (**Title Report**). The Title Report states, and neither party disputes, that the Property was originally granted to "Kimo" as Land Commission Award Number 5129 on July 26, 1853. It is also undisputed that no conveyances appear of record by Kimo, nor is there a probate proceeding of his estate or a judicial determination of his heirs.

Ross claims that her paper title originates with the estate of David Sardin, aka David Sardine (**Sardin**) who died testate on October 24, 1975. His Last Will and Testament nominated Hawaiian Trust Company, Ltd. (**Hawaiian Trust**) as executor of his estate. Sardin's estate was probated as Probate No. 6185, and proper notice via publication in local newspapers was given. The Circuit Court found, and Reuben does not challenge on appeal, that Sardin lived on and claimed ownership to the Property. Reuben argues, however, that Sardin did not own the Property.

Ross's father, Raymond Ross (**Ray**), stated in a declaration[2] that he had purchased the Property from Sardin's estate along with Gene Bagley (**Bagley**) and Ruel Bell (**Bell**) in 1977, and that the Property was legally deeded to Bagley in 1977. On March 24, 1977, Hawaiian Trust filed a petition for confirmation of, *inter alia*, the sale of the Property to Bagley.

---

[2]     It appears, based on the Circuit Court's FOFs, that Ray also testified at trial, along with other witnesses. However, as discussed further below, Reuben did not provide this court with transcripts of the trial to aid in our review of his challenge to the Circuit Court's findings and conclusions.

In a June 2, 1977 order, the Circuit Court confirmed the sale. On July 19, 1977, Hawaiian Trust recorded an Executor's Deed stating that the Circuit Court had confirmed the sale. On November 21, 1977, the Circuit Court approved the final account and distribution of Sardin's estate.

Ray also stated in his declaration that Bagley soon thereafter conveyed to Ray a one-third interest in the Property. On February 6, 1978, a Grant Deed was recorded, evidencing that on January 30, 1978, Bagley conveyed to Ray a one-third undivided interest in, *inter alia*, "[a]ll of Land Commission Award No. 5129, Tax Map Key 4-1-2-36." Ray moved onto the Property shortly thereafter, cleared the land, and used it in a variety of ways, including storing vehicles and as a "get away." Ray hired people to maintain the Property, created a driveway into the Property, and built three dwellings on the Property, two of which he rented out at various times. Ray paid property taxes on the Property beginning in 1978. Some of the bills and other documents included in the record on appeal to show that Ray paid the property taxes also include references to other "fee owners" of the Property, including Alfred Wahinehookae (**Alfred**), Reuben's father. The Circuit Court found that in the late 1970's or early 1980's, Bagley and Bell agreed to give Ray "full ownership" of the Property.

On March 22, 2005, Ray executed a quitclaim deed conveying all of his interest in the Property to Ross. The deed was recorded on April 14, 2005 as Document No. 2005-073469. Ross claims paper title to the Property through this quitclaim deed.

Reuben cites the Title Report to support his claim of an interest in the Property. The Title Report states that Moike Wahinehookae (**Moike**), Reuben's grandfather, was identified in a 1940 Department of Taxation tax route history sheet as an "assessed owne[r]" of an undivided one-half interest in the Property. The Title Report also states that "No conveyance(s) appear of record to or by MOIKE WAHINEHOOKAE[,]" and makes no

reference to any connection between Moike and Kimo, the original grantee.

According to the Title Report, Moike died on August 2, 1937, and there was no record of a probate proceeding of his estate. The Title Report posits that, forty years later, an October 18, 1977 Circuit Court decree declared that at the time of his death, Moike was the owner of an undivided one-half interest in the Property and that Moike had eight heirs who owned his undivided one-half interest in the Property as tenants in common, including Alfred, Reuben's father.

Alfred died testate on January 28, 1990. A March 19, 1991 Circuit Court decree of distribution stated that Alfred owned, *inter alia*, an undivided one-sixteenth interest in the Property and that the sole devisee of Alfred's estate was Margaret Wahinehookae (**Margaret**), Alfred's wife and Reuben's mother.

Margaret died on January 2, 2001. No conveyances appear of record by Margaret, nor are there records of a probate proceeding of her estate or a judicial determination of her heirs. According to the Title Report, the Obituary Column of the Honolulu Advertiser dated January 6, 2001 stated that Margaret was survived by five children, including a Reuben Wahinehookae. Reuben claims that he succeeds to a "paper title" interest in the Property through Margaret.

In a quiet title action, it is the plaintiff's initial burden to make a *prima facie* case:

> At trial, the quiet title plaintiff has the initial burden to prove a title in or to the land in dispute. The plaintiff's *prima facie* case can be made in various ways, but is usually done by bringing forward evidence of the initial land grant award and tracing ownership forward to the plaintiff through "mesne conveyances, devise, or descent" or through evidence of adverse possession, as provided in the quiet title statute. If the plaintiff fails to meet his initial burden at trial, then the defendant need not bring forward any evidence—the plaintiff's case is subject to dismissal, the plaintiff is not entitled to have its title quieted by the court, and the case ends without a determination of title. If the plaintiff and the defendant both bring forward evidence supporting their claims of title, then the court must decide, based on the evidence presented, which party has title superior to that of the other party. . . . the defendant may not prevent the plaintiff from quieting plaintiff's title, except by

4

> demonstrating that the defendant's title is superior to the plaintiff's title, i.e., the defendant may not defeat the plaintiff's claim by relying on evidence of a third-party's superior title.

<u>Alexander & Baldwin, Inc. v. Silva</u>, 124 Hawaiʻi 476, 482, 248 P.3d 1207, 1213 (App. 2011) (internal citation omitted).

> While it is not necessary for the plaintiff to have perfect title to establish a prima facie case, he must at least prove that he has a substantial interest in the property and that his title is superior to that of the defendants. <u>Shilts v. Young</u>, 643 P.2d 686, 689 (Alaska 1981). <u>Accord</u> <u>Rohner v. Neville</u>, 230 Or. 31, 35, 365 P.2d 614, 618 (1961), <u>reh'g</u> <u>denied</u>, 230 Or. 31, 368 P.2d 391 (1962) [("in suits to quiet title it is clear that the plaintiff need not have good paper title.")]

<u>Maui Land & Pineapple Co. v. Infiesto</u>, 76 Hawaiʻi 402, 408, 879 P.2d 507, 513 (1994). Thus, in the instant case, to establish her *prima facie* claim to title, Ross needed to establish that she had a substantial interest in the property and that her title was superior to Reuben's, as all other defendants had either defaulted from the case or disclaimed their interest in the Property.

Ross was unable to trace her title back to Kimo, the original grantee. However, Ross demonstrated a substantial interest in the Property by tracing paper title back to Sardin's estate. Ross established a chain of title from Sardin to herself by presenting evidence of: (1) Sardin's death in 1975; (2) the 1977 sale of the Property by Sardin's estate to Ray, Bagley, and Bell; (3) the 1977 Executor Deed to Bagley; (4) the 1978 Grant Deed from Bagley to Ray; and (5) the 2005 quitclaim deed from Ray to Ross, and by presenting the testimony of several witnesses at trial, which testimony this court is unable to review, as discussed below.

Reuben contends, primarily, that there is no evidence Sardin owned the Property. However, Reuben did not request trial transcripts, and no transcripts were included in the record on appeal. Thus, we cannot evaluate the testimonial evidence presented at trial and we cannot conclude that the Circuit Court erred in its evaluation of that testimony. <u>See</u>, <u>e.g.</u>, <u>State v. Hoang</u>, 93 Hawaiʻi 333, 336, 3 P.3d 499, 502 (2000) ("Without the

relevant transcript, there is insufficient evidence to review the alleged error, and [appellant] carries the burden of demonstrating the alleged error *in the record*. . . . Because the factual basis of [appellant's] alleged point of error is not part of the record on appeal, this court has no basis upon which to rule on the merits of his claim. . . . we will not presume error from a silent record.") (emphasis in original); Bettencourt v. Bettencourt, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995) ("The burden is upon appellant in an appeal to show error by reference to matters in the record, and he [or she] has the responsibility of providing an adequate transcript.") (brackets in original, citation and quotation marks omitted).

We also note that Reuben does not challenge FOF 7 on appeal, which finds that Sardin lived on and claimed ownership to the Property, and thus that finding is binding on this court. See Balogh v. Balogh, 134 Hawai'i 29, 33 n.3, 332 P.3d 631, 635 n.3 (2014) ("'[F]indings of fact that are not challenged on appeal are binding on the appellate court.'") (quoting Bremer v. Weeks, 104 Hawai'i 43, 63, 85 P.3d 150, 170 (2004)).

Reuben's challenge to FOF 8 has merit, as the inventory to Sardin's estate, rather than Sardin's Will itself, identified the Property as part of Sardin's estate. However, based on the other evidence in the record, and in light of the Circuit Court's other findings, including FOF 7, we do not conclude that this error warrants reversal of the court's decision.

Reuben's other challenges to Ross's establishment of a *prima facie* claim of title fail due to the lack of an adequate record on appeal. Hoang, 93 Hawai'i at 336, 3 P.3d at 502.

Once Ross established a *prima facie* case, the burden shifted to Reuben to demonstrate that his claim to title was superior to Ross's in order to prevent her from quieting title to the Property. Alexander & Baldwin, 124 Hawai'i at 482, 248 P.3d at 1213. Reuben claims to have inherited paper title[3] from

---

[3]     In his Counterclaim, Reuben also claimed ownership of the Property by adverse possession. However, much of the evidence in support of his

(continued...)

Margaret, who in turn inherited it from Alfred and Moike. As the Title Report states, "[n]o conveyance(s) appear of record to or by MOIKE WAHINEHOOKAE." The Title Report also makes no reference to any connection between Moike and Kimo, the original grantee, so Reuben is also unable to establish an unbroken, and thus clearly superior, chain of title.

Even if Reuben could establish that Moike held title in the property and that Alfred and then Margaret inherited title to one-sixteenth of the Property from Moike, there is no evidence that title ever passed from Margaret to Reuben through intestacy, devise, deed, or otherwise. The only evidence connecting Reuben to the purported chain of title is a reference in the Title Report to Margaret's obituary, which stated that she left behind five children, one of whom was "Reuben Wahinehookae[.]" Reuben's bare assertion that he is Margaret's heir is insufficient to establish that he inherited her interest,[4] if any, in the Property. See 11 Thompson on Real Property 8, (David A. Thomas, ed., 2002) ("By 'descent or hereditary succession' is understood the means by which a person upon the death of the ancestor acquires the estate of the ancestor as the ancestor's heir at law. It is only when the law transfers property to an heir that title is obtained by descent.") (footnotes omitted).

Both Ross's and Reuben's purported chains of title are broken. Although Ross was unable to establish perfect title by tracing Sardin's ownership back to the original grantee, Reuben was also unable to trace Moike's ownership back to the original grantee. Ross's burden was not to show perfect title, but to show that her title was superior to Reuben's. Maui Land & Pineapple, 76 Hawai'i at 408, 879 P.2d at 513. Ross was able to establish that she holds paper title originating with the 1977

_____

[3](...continued)
adverse possession claim appears to have been in the form of trial testimony. Without the trial transcripts, we are unable to determine the merits of this claim.

[4]     While not dispositive of Reuben's claim, we note that Reuben's claim to paper title as one of Margaret's five children appears to be to a mere one-fifth of one-sixteenth, or one-eightieth, interest in the Property.

Executor's Grant from Sardin's estate to Bagley, and she provided evidence of subsequent deeds leading to her claimed interest in the Property.

In light of the evidence presented, the Circuit Court's unchallenged FOFs, and the lack of trial transcripts, we conclude that Reuben failed to demonstrate that the Circuit Court erred in concluding that Ross had superior title and was therefore the sole fee simple owner of the Property.

Accordingly, the Circuit Court's April 11, 2012 Judgment is affirmed.

DATED: Honolulu, Hawai'i, February 26, 2015.

On the briefs:

James Richard McCarty
for Defendant/Counterclaimant/
Appellant

Kyle B. Coffman
for Plaintiff/Counterclaim
Defendant/Appellee

Presiding Judge

Associate Judge

Associate Judge